REGAN, Judge.
The plaintiff, Robert Lee, filed this suit against the defendants, Anthony Mortillaro and Gulf Insurance Company, his insurer, endeavoring to recover compensation for total and permanent disability resulting from an accident which occurred within the course of his employment. The plaintiff also requested the imposition of penalties, attorney’s fees and interest predicated upon the defendants’ arbitrary refusal to pay compensation.
The defendants answered and admitted the occurrence of the accident, but they denied that the plaintiff incurred permanent and total disability as a result thereof. They also denied the accusation that they were guilty of arbitrary and capricious refusal to pay compensation to the plaintiff.
The lower court rendered judgment in favor of the plaintiff granting him compensation at the rate of $35.00 per week from September 26, 1968, to December 3, 1968, awarded him $50.00 for drug bills and $555.00 for medical treatment by the physician of his choice. The court denied *708 the plaintiff’s claim for penalties and attorney’s fees and ordered that the defendant insurer pay all surgical and medical costs for repair of a neuroma in the plaintiff’s leg in the event that he should elect to submit to this treatment. From that judgment, the plaintiff has prosecuted this appeal.
The record discloses that on June 25, 1968, the plaintiff sustained a laceration on the outer portion of the lower right leg, when it came in contact with a power saw. In due course, the wound healed, leaving a scar between two and three inches in length and approximately a quarter of an inch in depth. The plaintiff initially visited Dr. William Roy, an industrial surgeon, who administered treatment, and he later was treated by Dr. Sam Macaluso, a physician of his own choosing who rendered extensive care. The plaintiff was also examined by a vascular surgeon and by Dr. Irving Redler, a specialist in orthopedics.
It is conceded by the litigants that there is no evidence of any functional impairment of the plaintiff's leg. His only claim for total and permanent disability is predicated upon a condition described by Dr. Redler as hyperesthesia, which exists along the front, upper edge of the scar which remained after healing. When Dr. Red-ler pressed the area, the plaintiff complained of pain and indicated that his discomfort extended down toward the ankle from the area of the scar. Dr. Redler found upon palpation a small nodule which he estimated to be an eighth of an inch in diameter just beneath the skin. He expressed the opinion that the plaintiff’s laceration resulted in the severance of a small branch of the superficial peroneal nerve, which is a sensory nerve which runs on the outer aspect of the leg and supplies some sensation to the outer part of the ankle and the dorsum of the foot. Dr. Red-ler concluded that the nodule which he found was probably a neuroma, or soft tissue tumor, resulting from the divided sensory nerve.
The plaintiff, who was employed as a carpenter and brick layer, testified that because of the injury he is no longer able to wear the high shoes or boots which are normal in his trade without experiencing pain. In short, the plaintiff’s claim for total and permanent disability, to reiterate, is based on the contention that he is forced to work in pain.
The record disclosed much doubt as to the accuracy of the plaintiff’s contention. Dr. Roy, the physician who initially treated him, testified that there was no disability resulting from the injury. Dr. Redler testified that he had on several occasions obviated a similar complaint of pain by advising him to place a small piece of foam rubber in the boot which may have covered the pain-causing area. This doctor was emphatic in explaining that the condition could be completely alleviated by a superficial incision under local anesthesia on an outpatient basis whereby the nerve, if found to be divided, could be sutured, thereby terminating the existence of pain.
The foregoing elucidation reveals that only questions of fact were posed for the trial court’s consideration. The judge thereof obviously accepted the defendants’ version of the extent of the disability caused to the plaintiff by this accident, and, therefore, concluded that he did not incur permanent and total disability as the result of the laceration.
The significant question which this appeal has posed for our consideration is whether that finding of the trial judge is so erroneous and unsupported by the evidence adduced herein as to warrant a reversal by us.
We are of the opinion that no useful purpose would be served by indulging in a protracted discussion of the foregoing testimony or by endeavoring to reconcile the respective litigants’ version of the degree of disability incurred by the plaintiff. The trial judge accepted the defendants’ version thereof and our analysis of *709 the record convinces us that the evidence preponderates in their favor and the judgment is, therefore, correct.
The plaintiff also complains that the lower court did not award him the full amount of the bill rendered by his treating physician for professional services performed over a substantial period of time. The doctor’s bill amounted to the sum of $975.00, and represented the charge for approximately 65 office visits, during which the plaintiff’s wound was allegedly cleaned and dressed, and cortisone and heat treatments were administered. On the other hand, the testimony of the defendants’ medical witnesses indicated that their fees would have been somewhat lower for the same amount of treatment, and the lower court decided, as a matter of fact, that an amount of $555.00 would be adequate to compensate the plaintiff for medical services rendered by his physician. This issue, like that of the degree of the plaintiff’s disability, is merely a question of fact to be decided by the trial court and not to be overruled in the absence of an abuse of its discretion.
The situation is ■ quite different, however, with respect to the plaintiff’s complaint that the lower court refused to award his physician a fee for testifying as an expert. While it is true that the testimony of the plaintiff’s physician was not accepted by the trial judge, it is also true that he was qualified as an expert in the field of general surgery, and it was stipulated that he was entitled to the privileges of an expert. In this connection he gave testimony which not only recited the course of treatment which he administered to the plaintiff, but he also testified as to medical opinions and other evidence solely within the category of what we have commonly accepted as expert testimony. In view of these facts, we are convinced that the lower court erred in not awarding this physician a fee as an expert.[1] At this time, the prevailing fee for physicians who offer expert testimony in personal injury cases is in the range of $100.00.[2] Therefore, this amount will be awarded to Dr. Macaluso for his testimony as an expert in this case.
For the foregoing reasons, the judgment o'f the lower court is amended by awarding to Dr. Sam Macaluso an expert fee of $100.00, and as amended, the judgment is in all other respects affirmed.
The defendants are to pay all costs incurred herein.
Amended and affirmed.

. Compare Diggins v. Salley & Ellis, La.App., 199 So. 442 (1940) with Savona v. Cutrone, La.App., 208 So.2d 138 (1968) and State Through Department of Highways v. Black, La.App., 207 So.2d 583 (1968).

. See, for example, Tillman v. Royal Castle System, Inc., La.App., 203 So.2d 817 (1967).