BYRNES, Judge.
This is a worker’s compensation suit in which plaintiff, Francine Ben, appeals, arguing that the trial court erred in failing to award her worker’s compensation benefits and supplemental training. Defendants, Alberto Culver/Sally Beauty Company (Sally’s) and Zurich-American Insurance (Zurich) answer the appeal, contesting the medical expense award and reservation of Ben’s right to receive supplemental earnings benefits. We affirm in part and amend in part.
Ben slipped on an oily substance at Sally’s on May 15, 1987, while employed as an outside sales representative. At that time, she was thirty-six years old, five foot eight inches tall, and weighed 225 pounds. The next day she went to the Emergency Room of Chalmette General Hospital, complaining of muscle soreness to her left side and was examined by Dr. W. J. Bradley. He recommended no lifting, bed rest, moist heat treatment and pain medication.
Subsequently, Ben was treated by Dr. Ralph J. Gessner, an orthopedic surgeon, who found that she had pains in her left shoulder, back, neck, left knee and left breast area. Dr. Gessner noted limited neck and back motion but no spasm. Physical therapy, pain medication and no work were prescribed through her next visit of June 5, 1987. Dr. Gessner admitted Ben to Chalmette General on June 26, 1987 for testing. The CT scans of the lumbosacral spine and cervical spine, as well as the EMG of the lower extremities were normal. Ben was discharged on June 30, 1987. On July 10, 1987, Dr. Gessner opined that she suffered a lumbosacral spine and cervical sprain. He recommended physical therapy and a neck and back exercise program. Dr. Gessner testified that Ben’s CAT scan, her neck and her back were normal in his examination of August 21, 1987.
On behalf of Zurich, Sally’s insurer, Dr. Milton Rosencrantz examined Ben on August 26, 1987, finding acute cervical spasm and lumbosacral sprain. He, too, recommended physical therapy and a neck and back exercise program. Drs. Gessner and Rosencrantz agreed that Ben could return to light duty work as of August 31, 1987.
Ben’s testimony at trial indicates that she received worker’s compensation benefits and medical payments for approximately six months. Payments decreased when she returned to work part-time at Sally's in September. Although her complaints continued, she returned to full-time employment in October, 1987. Her worker’s compensation benefits stopped entirely early in December, 1987. Her job terminated later that month.
In December, 1987, after medical payments stopped, Dr. Gessner removed a ganglion cyst from Ben’s inner left forefoot. Additionally, in February, 1988, internist *1293 Dr. Paul R. Verrette hospitalized Ben following complaints of chest pains radiating down her left arm and into the back of her neck. At that time, Dr. John Olsen, a neurosurgeon, also examined Ben. In his testimony he indicated that the EMG was not normal and opined that Ben’s headaches resulted from left C6 nerve root involvement. Evidence indicates that the CT scan, MRI scans and EKG’s were normal. Dr. Verrette diagnosed no neurological abnormalities and no nerve root problem. In his deposition, he testified that Ben was able to return to work.
The trial court awarded medical expenses to Ben for the ganglion cyst excision of December 22, 1987, the hospital bill for February-March, 1988, and other related medical bills. The judgment reserved Ben’s right to seek supplemental earnings benefits pursuant to LSA-R.S. 23:1221(3) in the future, and defendants were ordered to pay expert witness fees.
On appeal, Ben claims that the trial court erroneously (1) failed to require defendants to provide training and education for gainful employment under R.S. 23:1226(A); (2) required Ben to find employment where she is paid less than she was previously making before she can qualify for supplemental earnings benefits; (3) failed to award supplemental earnings benefits for the maximum of 520 weeks provided by LSA-R.S. 23:1221(3)(d); and (4) failed to award attorney’s fees for the arbitrary failure of the defendants to make additional payments. Defendants counter that the trial court erred in (1) awarding medical expenses that were not related to Ben’s job injury; and (2) reserving plaintiff’s right to supplemental earnings benefits in the future when she has been released to full work duty without restrictions by her treating physicians.
A review of the medical testimony and records indicate that Dr. John Olson’s diagnosis of the left C6 nerve root involvement is not supported by Dr. Verrette’s findings or by test results in February, 1988. At trial Dr. Olson deferred determination of Ben’s work status to Dr. Gessner, her treating physician. Dr. Gessner stated that he returned Ben to full duty status after excision of the ganglion cyst in December, 1987, and he had only restricted her for the cyst removal. Ben testified that Dr. Gessner told her to return to work when she last saw him in October, 1987. At that time, she did return to full-time employment. At trial Drs. Gessner and Verrette testified that Ben was presently able to be employed full-time. It is within the province of the trial court to determine the weight accorded medical and lay testimony in a worker’s compensation case. Allen v. Louisiana-Pacific Corp., 512 So.2d 556, 560 (La.App. 3rd Cir.1987). The evidence supports the determination that additional payment of worker’s compensation for disability was unwarranted after December, 1987.
Dr. Gessner related the medical expenses for the ganglion excision to the May, 1987 accident. Also, in his deposition, Dr. Verrette stated that the headaches and pain that Ben complained of in February, 1988, were partially trauma related to the accident as distinguished from migraine headaches Ben suffered before the accident or from headaches resulting from hydro-glycerin medication for treatment of angina. Dr. Verrette determined that her pains in February were not indicative of angina and were related to injuries to the left side of the body incurred at work. We do not find that the trial court committed manifest error in awarding the additional medical expenses based on its conclusion that they were related to plaintiff’s accident. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Allen v. Louisiana-Pacific Corp., supra, 512 So.2d at 558.
Plaintiff contends that defendants failed to provide rehabilitative training and education under R.S. 23:1226(A). The record indicates that Ms. Beverly Mann, vocation rehabilitation counselor, testified for defendants as an expert witness in vocational placement. Mann stated that when she first interviewed Ben in October, 1987, plaintiff needed no vocational rehabilitation assistance because she had returned to work at Sally’s. In pertinent part, LSA-R.S. 23:1226(A) provides: “When an em *1294 ployee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitative services.” The stataute’s purpose is to educate and increase the job marketability of employees who cannot return to their former positions. Sino v. Chalmette General Hospital, 489 So.2d 311, 313 (La.App. 4th Cir.1986). This does not include employees who are able to return to work but fail to do so. Harris v. Rumold, 518 So.2d 9, 13 (La.App. 4th Cir.1987). We find that Ben failed to prove that her injury prevents her from earning wages equal to the wages she earned prior to the accident and that defendants are under no obligation to provide rehabilitative services.
Plaintiff asserts that the trial court erred in computing Ben’s supplemental earnings benefits. Under LSA-R.S. 23:1221(3)(a), a disabled employee who is able to earn wages equal to ninety percent or more of the wages earned at the time of injury is not entitled to supplemental earnings benefits. The employer carries the burden of showing that the employee is physically able to work and that such work was offered to the employee or is available to him in his or her or the employer’s community. Williams v. Avondale Industries, Inc., 521 So.2d 491, 493 (La.App. 4th Cir.1988).
The testimony of defendants’ rehabilitation expert shows that there are jobs available for the rate of pay equal to which the plaintiff was earning at the time of the accident. Although the record does not reflect Ben’s actual earnings, it was confirmed in oral argument that Ben’s salary was close to minimum wage. Comparable jobs were presented at trial. We conclude that the defendants carried their burden of proving that there are jobs available to plaintiff as stated in R.S. 23:1221(3)(c)(i). Batiste v. Hopeman Bros., Inc., 508 So.2d 922, 923 (La.App. 4th Cir.1987); writ denied, 512 So.2d 1178 (La.1987).
Supplemental earnings benefits awarded to a former employee should not be calculated on the basis of zero earnings but should be calculated on the basis of the average monthly wage that employee earned or was capable of earning. LSA-R.S. 23:1221(3)(a). Clark v. Atlantic Painting Company, 521 So.2d 505, 510 (La.App. 4th Cir.1988). Because Ben has returned to full time employment status and her salary was close to minimum wage, we find that she is able to earn wages equal to ninety percent of the wages earned at the time of injury. Therefore, she is not entitled to supplemental earnings benefits under LSA-R.S. 23:1221(3)(e)(i). Williams v. Avondale, Industries, Inc., supra, 521 So.2d at 493. The trial court clearly erred in awarding any future differential between Ben’s salary of the past and future.
We reject plaintiff’s claim that the defendants acted arbitrarily or capriciously in denying payments because the medical testimony supports termination of payment in December of 1987. Additional medical expenses were incurred after Ben’s treating physician had returned her to full time employment status. Therefore, the trial court correctly denied plaintiff’s request for attorney’s fees and penalties pursuant to LSA-R.S. 23:1201.2.
For the foregoing reasons, the judgment of the trial court is amended to omit reservation of plaintiff’s right to future supplemental earnings benefits. In all other respects, the judgment of the trial court is affirmed. All costs of the appeal are assessed to Franeine Ben.

AFFIRMED AS AMENDED.